UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

    Defendant.

Case No. 15-cv-05503-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

I. INTRODUCTION

Plaintiff Nationwide Mutual Insurance Company paid $1 million dollars to settle certain personal injury claims brought against San Francisco Unified School District ("the District") arising from an automobile-pedestrian accident that occurred on District property.  The District was listed as an "additional insured" on a liability policy Nationwide had issued to San Francisco Associates, a youth sports organization that contracted with the District to use its facilities.

Nationwide now brings this action against Certain Underwriters at Lloyd's, London ("Lloyds"), seeking to recover all or part of the $1 million dollars it paid out, on the theory that Underwriters was obliged to provide coverage under a policy it issued directly to the District. Lloyds moves to dismiss the complaint, contending that as a matter of law it had no duty to indemnify the District unless and until the District satisfied a "Self Insured Retention" ("SIR") provision of the policy by paying $250,000 out of its own pocket, a condition that the face of the

complaint reveals has not been satisfied. Lloyds also argues that its policy in any event offers no coverage under the "Errors and Omissions" ("E&O") provisions, as "bodily injury" is excluded from that section. As a result, Lloyds contends, Nationwide's eighth claim for relief—seeking declaratory relief that the Lloyds policy does provide E&O coverage—fails, regardless of the outcome of the SIR issue.

Lloyds has failed to show that its potential liability is precluded by the failure of the District to pay the SIR from its own funds. Accordingly, the motion cannot be granted in whole. Nationwide, however, does not contest Lloyd's contention that there is no E&O coverage. As a result, the eighth claim for relief will be dismissed.

## II. BACKGROUND

San Francisco Associates operates a youth basketball program. In September of 2011 it obtained a permit from the District to use certain school facilities, with various limitations and conditions. As, noted, in furtherance of that arrangement, San Francisco Associates obtained a Comprehensive General Liability ("CGL") insurance policy from Nationwide in which the District was named as an "additional insured."

In December of 2011, the District hosted a "school-related evening event" at Presidio Middle school, attended by more than 200 people. Part of an outdoor "blacktop quad/playground area" was converted to a parking area for the event, but allegedly lacked adequate lighting or a "traffic control plan." Several children were injured when struck by a car in the makeshift parking lot.

Two cases brought on behalf of the injured were filed in San Francisco Superior Court against the District, and were eventually consolidated. The District tendered that underlying litigation to Nationwide, which ultimately agreed to defend under a reservation of rights. Nationwide alleges that for several months it attempted to engage Lloyds in communication regarding the two companies' respective potential liability. Nationwide asserts that Lloyds refused to communicate, or to participate in efforts to mediate the underlying litigation.

1  Nationwide ultimately settled the underlying litigation for its policy limits of $1,000,000.

2  In this action, Nationwide asserts ten numbered claims for relief against Lloyds. The first six claims all seek declaratory relief that Nationwide had no duty to defend and indemnify the District, for various reasons arising from the language of the policy and/or the underlying circumstances. While the parties do not expressly discuss any of those claims for relief, there is no dispute that Nationwide will not be able to seek declaratory relief on those issues as against Lloyds, unless Lloyds also potentially had a duty to indemnify the District under the policy it issued. The focus of the present motion, therefore, is on the last four claims for relief.

The seventh claim seeks declaratory relief that the Lloyds policy provides CGL coverage for the underlying litigation. The eighth claim seeks declaratory relief that the Lloyds policy provides E&O coverage that would have applied to the underlying litigation. The ninth and tenth claims seek equitable contribution, and equitable subrogation, respectively.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." Id. The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id*.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

In this instance, there is no real controversy that the claims are pleaded with adequate factual detail. The parties are in agreement that the question presented is one of law, and that it may appropriately be addressed at this juncture, on the face of the pleading.

IV.  DISCUSSION

A.  SIR

Lloyds' central contention is that, regardless of any other circumstance, it has no duty under its policy to indemnify the District[1] until and unless the district has satisfied the SIR requirement set out in the policy. The applicable SIR is $250,000. As noted, there is no dispute that the District did not pay any funds from its own coffers to settle the underlying litigation. Thus, unless the District is legally entitled to satisfy the SIR through payments made by Nationwide (in the form of defense costs that Nationwide paid, on top of the payout to the underlying plaintiffs), Lloyds would have no obligation to the District in connection with the underlying litigation, and therefore no obligation to Nationwide in this action.

Two California cases provide some parameters of when insureds are, or are not, obligated

---

[1] There is no dispute that the Lloyds policy in an excess policy that *only* ever provides indemnity, at most, and that it does not obligate Lloyds to provide or pay for a defense in any underlying litigation.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 15-cv-05503-RS

4

to satisfy SIRs from their own pockets.  First, in *Vons Companies, Inc. v. United States Fire Ins. Co*. 78 Cal.App.4th 52 (2000), the court held that in the absence of policy provisions plainly and unambiguously requiring an insured to satisfy an SIR from its own pockets, other insurance may be applied to the obligation.  *Id.* at 63-64 ("a reasonable insured could read the policy as permitting the use of other insurance proceeds to cover the SIR amount.")

Second, *Forecast Homes, Inc. v. Steadfast Ins. Co*., 181 Cal.App.4th 1466 (2010) provides an example of the sort of policy language an insurer may utilize to establish with complete clarity that the insured must pay an SIR amount out of its own pocket.  One of two forms of policy at issue in that case specifically provided, "[p]ayments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the self-insured retention." 181 Cal.App.4th at 1472.  Not surprisingly, the court held that in the face of that language, a contractor who was named as an "additional insured" could not satisfy the SIR on behalf of the named insured subcontractors who had obtained the policies.  *Id.* at 1480.  ("The SIR in our case is not ambiguous. It plainly provides the named insured must pay the SIR.").

A second form of policy at issue in *Forecast*—an older version—did not go quite as far in making explicit that the SIR had to be paid directly by the named insured; in the light of the policy language as a whole, however, the court concluded the result was the same. *See id.* at 1481 (relying on policy language including "it is a condition precedent to our liability that *you* [the named insured] make actual payment.").

The *Forecast* court observed:

> [T]he Vons court, and other courts interpreting SIRs are all careful to note an SIR, like any insurance provision, must be enforced according to its plain terms. Who may satisfy the SIR depends on each policy's express provisions.

*Id.* at 1475.

Lloyds has failed to show that the "plain terms" and "express provisions" of the policy here require the insured to pay the SIR from its own pockets.  First, there is certainly no express statement similar to the one in *Forecast* that payments by others do *not* satisfy the SIR.  Second,

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 15-cv-05503-RS

5

while *Forecast* also shows that a provision expressly rejecting payments by others is not necessarily required, the Lloyds policy here does not contain the other types of language that the *Forecast* court pointed to either. The Lloyds policy does not define and use the term "you" and "yours"—a point on which *Forecast* laid heavy emphasis. Moreover, the Lloyds policy contains nothing as direct and unambiguous as the express statement that "it is a condition precedent to our liability that *you* make actual payment."

Lloyds nonetheless insists that its policy unambiguously requires the District to satisfy the SIR from its own coffers. Lloyds's strongest argument arises from the definition of SIR itself in the definitions section of the policy. It states:

> SELF INSURED RETENTION means that United States Dollar amount specified in the SCHEDULE OF SELF INSURED RETENTIONS which the ASSURED is obligated to pay because of loss or damage covered under any Section of this policy, before this policy indemnifies the ASSURED for the same loss.

Standing alone, this definition that the SIR is something that the insured "is obligated to pay" arguably supports the notion that it cannot be paid by some other entity. Even then, however, it is not completely certain that an insured could not "pay" the SIR *indirectly*—for example, by purchasing other insurance for the very purpose of ensuring that the SIR gets paid.

Moreover, the definition does not stand alone. The very first page of the policy following the schedule of SIR dollar amounts appears to be designed to explain the SIR and to warn the insured about how it limits the coverage being purchased. It states:

> The ASSURED <u>is responsible for payment</u> of each applicable SELF INSURED RETENTION except as otherwise stated . . . . [2]

(Underscoring added.)

Lloyds' vehement protest to the contrary notwithstanding, the phrase "is responsible for payment" is not equivalent to "must pay from its own pocket." While the insured obviously must make sure the SIR gets paid, nothing in the term "responsible for" unambiguously precludes an

---

[2] There is no dispute that the "otherwise stated" exceptions are not germane in this case.

insured from satisfying that obligation by purchasing other insurance to make the payment.[3]

Finally, Lloyds' motion placed significant emphasis on another provision in the basic policy form.  Lloyds insisted the policy conclusively precludes the insured from satisfying its SIR obligation by arranging for payment from other sources given a provision that "[n]o monies payable or collectible from such other insurance shall accrue to the Loss Fund."  General Policy Conditions, para. 13.  This argument, however, is foreclosed by Endorsement 2 to the policy issued to the District, which provides,

> It is further understood and agreed that any reference made to PART II EXCESS LOSS FUND PROTECTION and to the ASSURED'S Loss Fund within the policy wording shall be deemed to be deleted.

In response to an order for further briefing on this point, Lloyds acknowledged that the effect of endorsement is to remove paragraph 13 of the General Policy Conditions from the policy as actually issued, and it has withdrawn that portion of its argument.

Accordingly, the only relevant provisions are those stating that the District "is responsible for payment" of the SIR and that the SIR is something the District is "obligated to pay." That language falls short of stating a clear and unambiguous requirement for the District to pay the SIR directly from its own coffers, as opposed to indirectly, through other means.  While the policy language is not identical to that in either *Vons* or *Forecast*, the conclusion of the *Vons* court is apt here.  "[A] reasonable insured could read the policy as permitting the use of other insurance proceeds to cover the SIR amount."  78 Cal.App.4th at 64.

B.  8th Claim

Nationwide's opposition to the motion to dismiss included no response to Lloyd's argument that its policy precludes any E&O coverage, because the underlying claim was for

---

[3] In this case, of course, the District did not purchase the "other insurance" itself.  It, however, arguably made sure that such other insurance was in place, which also could be a form of satisfying its obligation to see that the SIR got paid.

bodily injury.[4] At oral argument, Nationwide conceded the issue. Accordingly, the motion to dismiss will be granted as to the 8th claim for relief.

## V.  CONCLUSION

The motion to dismiss is granted as to the eighth claim for relief, without leave to amend, and is otherwise denied. Defendant shall file an answer within 20 days of the date of this order.

**IT IS SO ORDERED**.

Dated: July 7, 2016

_____
RICHARD SEEBORG
United States District Judge

---

[4] Section IV Exclusions of the E&O Endorsement provides "THIS SECTION DOES NOT INSURE AGAINST: [¶] A. Any CLAIM for damages, whether direct or consequential, for BODILY INJURY . . . ."

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 15-cv-05503-RS